IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAUL ZAMORA,

       Petitioner,

v.                                            No.    CV 16-695-JCH-GBW
                                                                      CR 97-488-JCH

UNITED STATES OF AMERICA,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Petitioner's Emergency Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255 (*doc. 1*).[1] Having reviewed the initial and supplemental briefing on Petitioner's Motion (*docs. 3, 6, 9, 10, 12, 13, 14*) and being fully advised, I recommend Petitioner's Motion be denied as untimely.

I.    **BACKGROUND**

On July 21, 1998, following a jury trial, Petitioner was convicted of Attempted Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d), as charged in Count I of the two-count first superseding indictment.[2] *Cr. docs. 60, 94*. Prior to sentencing, the United States Probation Office prepared a presentence report (PSR). The pertinent

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-695-JCH-GBW. Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 97-CR-488-JCH. For filings made on both dockets, only the civil docket number is given.
[2] Prior to the filing of the superseding indictment, Petitioner entered into a plea agreement to plead guilty to a superseding information. *Cr. docs. 46, 47, 48*. The plea agreement stipulated to a sentence of 132 months of imprisonment, but Petitioner later withdrew his guilty plea and proceeded to trial. *See cr. docs. 47, 54, 55, 56*.

factual basis underlying Petitioner's Attempted Armed Bank Robbery conviction is as follows: on July 9, 1997, Petitioner's co-defendant Joseph Gutierrez attempted to rob a credit union in Santa Fe, New Mexico. PSR ¶ 9. Gutierrez approached a bank teller with a gift-wrapped package and handed her a demand note stating that the package contained a bomb, but abandoned the attempt when the teller was unable to retrieve any money. *Id.* It was later determined by FBI investigators that Petitioner wrote the demand note and drove the getaway vehicle involved in the crime. PSR ¶¶ 11, 12, 15.

As reflected in the PSR, the base offense level for Petitioner's crime of Attempted Armed Bank Robbery was 25 and Petitioner's criminal history category was V. PSR ¶ 63. Therefore, the applicable sentencing range under the guidelines would ordinarily have been 100-125 months. *Id.* However, Petitioner was classified as a career offender pursuant to U.S.S.G. § 4B1.1, which increased the applicable mandatory sentencing range. PSR ¶¶ 35, 64. Specifically, the PSR classified Petitioner as a career offender on the basis that both the instant offense of attempted armed bank robbery as well as three of Petitioner's prior convictions constituted "crimes of violence" under the definition found in U.S.S.G. § 4B1.2(a)(2),[3] thus triggering the sentencing enhancement.[4] PSR ¶¶ 35, 64. At the time of Petitioner's sentencing, the guidelines defined "crime of violence" as follows:

---

[3] This provision was amended on August 1, 2016. The amendment deleted the residual clause discussed herein from the definition of "crime of violence." The remainder of the definition remained the same. Because it is the relevant provision, citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.

[4] The predicate convictions also satisfied the additional requirements of U.S.S.G. § 4B1.1(c).

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (1997).

The three prior convictions listed in the PSR as "crimes of violence" underlying the application of the career offender enhancement included: (1) a 1988 conviction for Attempt to Commit Aggravated Assault with a Deadly Weapon; (2) a 1991 conviction for False Imprisonment; and (3) a 1992 conviction for False Imprisonment, Aggravated Assault, and Robbery. PSR ¶ 64. As the statutory maximum for the instant offense of attempted armed bank robbery was 25 years, Petitioner's base offense level was adjusted to 34 and his criminal history category adjusted to VI pursuant to the career offender provision. PSR ¶ 64; *see also* U.S.S.G. § 4B1.1(b). Accordingly, the mandatory applicable guideline sentencing range for his offense increased to 262-327 months. PSR ¶ 64.

Petitioner made several objections to the PSR, including that his 1988 conviction was a misdemeanor rather than a felony. *See cr. doc. 100* at 3. This objection was found to have merit, and the PSR was accordingly revised to reflect that Petitioner had only two prior felony convictions constituting crimes of violence—namely, the 1991 and 1992 offenses discussed above. *Doc. 9* at 3; *see also cr. doc. 101* at 5, *cr. doc. 142* at 10.

3

However, this amendment to the PSR did not alter Petitioner's classification as a career offender under the guidelines, as the relevant provision requires only two prior "crime of violence" convictions to trigger its application. *See* U.S.S.G. § 4B1.1(a). The applicable mandatory guideline sentencing range of 262-327 months of imprisonment therefore remained the same notwithstanding the revision to the PSR. *See cr. doc. 142* at 12-13.

During the sentencing phase of his case, Petitioner's counsel sought a downward departure from this sentencing range on a number of asserted grounds. However, the request for downward departure was denied and Petitioner was sentenced to 262 months of imprisonment followed by a three-year period of supervised release. *See cr. docs. 102, 142* at 10, 13.

Petitioner's Motion argues that the offenses of false imprisonment and robbery under New Mexico law are no longer crimes of violence in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015). *Doc. 1* at 14-15, 23-24.[5] Consequently, Petitioner argues that his sentence was unconstitutionally enhanced under the career offender provision, and he is thus entitled to resentencing as a matter of due process. *Id*. at 1-14, 24-26. Petitioner contends that the *Johnson* decision should be applied retroactively to nullify the application of the career offender enhancement to his sentence and to adjust the

---

[5] Petitioner also argues in his Motion that his 1988 attempt to commit aggravated assault is no longer a crime of violence. *Doc. 1* at 15-23. However, this offense ultimately did not underlie the application of the career offender enhancement to Petitioner's sentence, and the United States is in accord with Petitioner that this offense does not constitute a "crime of violence" under the guidelines. *See generally doc. 9*; *see also cr. doc. 101* at 5. Therefore, this argument need not be addressed further.

4

sentencing guideline range for his Attempted Armed Bank Robbery offense to 100-125 months. *Id.* at 1-2, 24-26. The United States argues that (1) *Johnson* is inapposite to Petitioner's sentence, which was enhanced under the guidelines rather than the statute at issue in *Johnson* (*see doc. 3* at 2-4); (2) a rule extending *Johnson* to guidelines cases would not retroactively apply to Petitioner's sentence (*see id.* at 4-10); and (3) as a threshold matter, the Court does not have jurisdiction to consider this case because Petitioner's motion is time-barred under 28 U.S.C. § 2255(f), and no exception applies given that the right recognized in *Johnson* is not the one Petitioner asserts here as the basis of his motion. *See doc. 12* at 4-6.[6]

## II. ANALYSIS

### A. Preliminary Matters

The parties agree that Petitioner was not convicted of at least two predicate offenses which would qualify as "crimes of violence" under either the "elements clause" or the "enumerated offenses" clause of U.S.S.G. § 4B1.2(a)(2). *See generally doc. 9*. In fact, any argument to the contrary is foreclosed by the procedural history of Petitioner's criminal case. Specifically, Petitioner appealed his sentence to the Tenth Circuit Court of Appeals on several grounds, including that his 1991 false imprisonment conviction did not qualify as a "crime of violence" and that the career offender enhancement was therefore improperly applied to his sentence. *See United*

---

[6] The United States raised this argument for the first time in response to the Court's Order for Supplemental Briefing regarding the impact of *Beckles* on Petitioner's motion (*doc. 11*).

*States v. Zamora*, 222 F.3d 756, 763 (10th Cir. 2000). In rejecting Petitioner's argument, the Tenth Circuit held that the New Mexico crime of false imprisonment qualified as a crime of violence solely under the residual clause of U.S.S.G. § 4B.1.2(a).[7] The court explained:

> Although it is possible to theorize situations where physical force would not be used during the commission of the crime, this is not the inquiry. . . . [I]t is enough to show that there is a substantial risk of physical injury. . . . Given the substantial risk of violence associated with the crime of false imprisonment, we have no trouble deciding that this crime is a crime of violence for purposes of sentencing the defendant as a career [offender] pursuant to U.S.S.G. § 4B1.1.

222 F.3d at 764-65. Moreover, the court added in a footnote that a case from the Sixth Circuit which held that false imprisonment was not a crime of violence was not persuasive, as that court had applied the elements clause rather than the residual clause in its analysis. *See id.* at 765 n.3 (citing *United States v. Roberts*, 986 F.2d 1026, 1034 (6th Cir. 1993)). Thus, there can be no doubt that, absent the residual clause, Petitioner's 1991 offense of false imprisonment would not qualify as a crime of violence under the guidelines.

The question that arises, then, is twofold: (1) whether the holding in *Johnson* applies to the mandatory guidelines so as to render the residual clause of U.S.S.G. § 4B1.1(a)(2) unconstitutional, and (2) if so, whether such a rule may be retroactively applied to vacate Petitioner's sentence. However, before the Court may address this

---

[7] Petitioner did not argue, at the trial court or on appeal, that the residual clause was unconstitutional.

substantive question, it must resolve the jurisdictional issue raised by the United States in its supplemental brief—namely, that Petitioner's motion is untimely as it was not filed within the one-year statutory limitation period under 28 U.S.C. § 2255(f). *See doc. 12 at 4-6.*

B. **Timeliness of § 2255 Motion Generally**

Under 28 U.S.C. § 2255, a prisoner in federal custody may collaterally attack his sentence as unconstitutional or illegal by bringing a motion in the court which imposed the sentence. 28 U.S.C. § 2255(a). However, the statute requires that such a motion be brought within one year of the later of:

(1) the date on which the judgment of conviction becomes final; [or]

. . .

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

*Id.* § 2255(f).[8] Otherwise, it is time-barred and the Court therefore has no jurisdiction to consider it. *See United States v. Blackwell*, 81 F.3d 945, 947-49 (10th Cir. 1996) (court does not have inherent power to resentence defendant but must find that power within a statute).[9] Petitioner's motion was filed more than a year after his judgment became final, but less than a year after the *Johnson* decision. *See cr. docs. 140, 112.* Consequently,

---

[8] The statute provides for two other potential time triggers, but they are rarely invoked and not relevant here. *See* 28 U.S.C. § 2255(f)(2), (f)(4).

[9] While courts do have the power to equitably toll the statutory limitation period of § 2255(f), Petitioner does not seek equitable tolling here, nor does he assert the requisite grounds for granting it. *See Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008).

7

for his motion to be timely, Petitioner must show that *Johnson* newly recognized the right he asserts and that such right was made retroactive. In other words, *Johnson* must have established that his sentence was unconstitutionally enhanced pursuant to the residual clause of the guidelines definition of "crime of violence." *See* U.S.S.G. § 4B1.1(a)(2).

### C. *Johnson* Did Not Recognize the Right Asserted by Petitioner

In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is unconstitutionally vague. 135 S. Ct. at 2563. Therefore, individuals could not be subject to the ACCA if their underlying prior convictions qualified as "violent felonies" only under the vague residual clause. *Id*. The Supreme Court announced that *Johnson* would apply retroactively on collateral review in *Welch v. United States*, reasoning that *Johnson* announced a substantive new rule. 136 S. Ct. 1257, 1264-65 (2016).

However, Petitioner was not sentenced pursuant to the ACCA. Instead, as described above, he received an increase to his sentencing guideline range pursuant to the career offender guideline due to his "two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The enhancement was based on two prior convictions for "crimes of violence," as defined in § 4B1.2(a).

8

*See cr. docs. 102, 142* at 10. These two prior convictions included the 1991 false imprisonment offense and the 1992 false imprisonment, aggravated assault, and robbery offenses. *See* PSR ¶ 64; *cr. doc. 142* at 10. Petitioner asserts that *Johnson* nevertheless applies to his sentence because the definition of "crime of violence," as used in the career offender guideline, contains a residual clause identical to the residual clause in the ACCA. *See* U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii). Moreover, as explained above, Petitioner's sentence would not have been subject to the career offender enhancement under the guidelines absent that residual clause. Thus, Petitioner contends that *Johnson* established the right he now asserts, qualifying his petition as timely under § 2255(f)(3).

The Supreme Court recently addressed the applicability of the *Johnson* decision to the United States Sentencing Guidelines in *Beckles v. United States*, 137 S. Ct. 886 (2017). In that opinion, the Supreme Court held that the guidelines are not subject to a void-for-vagueness challenge. 137 S. Ct. at 894. However, *Beckles* dealt with a vagueness challenge to the advisory sentencing guidelines, and the Court's holding relied extensively on the distinction between the advisory guidelines and mandatory sentence enhancements such as those compelled by statutes like the ACCA. *See id.* at 892-95. In contrast, Petitioner was sentenced in 1998, prior to the sentencing guidelines being declared "effectively advisory." *See cr. doc. 102*; *see also United States v. Booker*, 543 U.S. 220, 245, 258-65 (2005). Consequently, *Beckles* does not necessarily bar Petitioner's

9

void-for-vagueness attack against his sentence imposed pursuant to the pre-*Booker* mandatory guidelines. Indeed, the underlying rationale of *Beckles* may support the opposite conclusion. Specifically, in deciding that *Johnson* does not apply to the advisory guidelines, the *Beckles* majority relied heavily on the distinction between mandatory enhancements to a defendant's sentence—such as the fifteen-year minimum sentence of imprisonment compelled by the ACCA—and the optional enhancements provided in the post-*Booker* advisory sentencing guidelines. *See* 137 S. Ct. at 892 ("Unlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences. . . . Accordingly, the Guidelines are not subject to a vagueness challenge under the Due Process Clause"). The question in a future case will be whether the ability for sentencing judge to depart under U.S.S.G. §§ 5K2.0 *et seq.* prior to *Booker* was sufficient for the pre-*Booker* guidelines to escape vagueness challenges.

However, while the rationale of *Beckles* may support the argument against the validity of the residual clause of the guidelines "crime of violence" definition prior to *Booker*, it significantly undermines Petitioner's argument that *Johnson* actually recognized the right he is currently asserting. First, rather than conducting a particular analysis of *Johnson*, the *Beckles* court focused on the antecedent question of whether the guidelines are subject to vagueness challenges generally. *See* 137 S. Ct. at 892-97, 898-905. The *Beckles* court, of course, held that, at least for defendants sentenced under an advisory sentencing guideline regime, they are not. *Id.* at 895. Notably, the *Beckles*

10

court affirmed the judgment of the Eleventh Circuit, which, as quoted uncritically by the Supreme Court, had held that, "*Johnson* says and decided nothing about career-offender enhancements under the Sentencing Guidelines[.]" *Id.* at 891 (quoting *Beckles v. United States*, 616 F. App'x 415, 416 (11th Cir. 2015) (*per curiam*)). Given the Court's apparent agreement with this assessment of *Johnson*, it is difficult to conclude that *Johnson* recognized the Petitioner's right not to have the career offender enhancement applied to him pursuant to the residual clause of the crime of violence definition.[10]

Second, while the majority opinion arguably only implied that the question of whether mandatory sentencing guidelines are subject to vagueness challenges remained open, Justice Sotomayor's concurrence says so explicitly. As she explained:

> The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced before our decision in [*Booker*]—that is, during the period in which the Guidelines *did* 'fix the permissible range of sentences,'—may mount vagueness attacks on their sentences. That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.

*Id.* at 903 n.4 (Sotomayor, J., concurring) (internal citations to majority opinion and *amici* brief omitted). Consequently, the majority and concurring opinions in *Beckles* lead powerfully to the conclusion that *Johnson* did not in fact recognize any right or rule

---

[10] Notably, the timeliness of the petitioner's § 2255 motion in *Beckles* did not rely on *Johnson*'s applicability to his advisory guidelines sentence, as he brought his motion within one year of the date on which his conviction became final. *See* 28 U.S.C. § 2255(f)(1); *see also Beckles*, 137 S. Ct. at 891; *United States v. Beckles*, 565 F.3d 832 (11th Cir. 2009), *cert. denied*, 558 U.S. 906 (2009). But in cases such as Petitioner's and those of other defendants sentenced under the mandatory guidelines seeking relief under *Johnson*, the timeliness issue is paramount. The vast majority of such defendants—all sentenced prior to the 2005 *Booker* decision—must rely on § 2255(f)(3) as the jurisdictional basis for their motions.

applicable to the calculation of sentencing guideline ranges. As another magistrate judge in this district recently concluded:

> Attempting to reconcile these two concepts—that *Beckles* left open whether sentences imposed under the mandatory, pre-*Booker* guidelines can be challenged as void for vagueness, but *Johnson*, decided two years earlier, recognized the right to modify a sentence increased under the mandatory, pre-*Booker* guidelines and made the right retroactively applicable on collateral review—reveals that [the petitioner's] motion should be denied. Simply put, if a concurring opinion says the existence of a right remains an open question, and the majority opinion does not explicitly address the right, then the Supreme Court did not previously announce the existence of the same right.

*Torres v. United States*, Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 25* in 16-cv-645 LH/WPL (D.N.M. June 20, 2017); *see also Ellis v. United States*, No. 2:16-CV-484-DAK, 2017 WL 2345562, at *2-*3 (D. Utah May 30, 2017) ("Because the court concludes that *Johnson* does not apply to [the petitioner's] case and that [] the Supreme Court . . . has [not] directly recognized a right to modify a sentence increased under the residual clause of U.S.S.G. § 4B1.2 before *Booker*, the court concludes that . . . [the] petition is untimely [under § 2255(f)(3)].").

Finally, the conclusion that the Supreme Court has not yet recognized a right to a vagueness challenge of sentencing guideline provisions (in *Johnson* or otherwise) is further bolstered by considering the import of a hypothetical future Supreme Court decision. Assume in the future that the Supreme Court rules that pre-*Booker* sentencing guidelines are subject to vagueness challenges. Would such a case recognize a new rule or right? "[A] case announces a new rule if the result was not *dictated* by precedent

12

existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989).[11] A holding "is not so dictated . . . unless it would have been 'apparent to all reasonable jurists.'" *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)). Did *Johnson* make it apparent to all reasonable jurists that the residual clause in § 4B1.2 of the pre-*Booker* sentencing guidelines is subject to a vagueness challenge? Given that sentencing guidelines were not at issue in *Johnson* and *Beckles* appears to have left that question open, I cannot agree that it does. Looking at the question from a different angle, the Supreme Court has discussed what does not constitute a "new rule":

> [A] case does *not* announce a new rule, when it is merely an application of the principle that governed a prior decision to a different set of facts. . . .

---

[11] In the analysis of habeas petitions and the potential retroactivity of "new" rulings to such petitions, various similar, but different, terms are used to describe the right or rule upon which a request for relief is based. In 28 U.S.C. § 2255(f)(3), the term "newly recognized" "right" is used. In 28 U.S.C. § 2255(h)(2), the term "new rule of constitutional law" is used. In *Teague v. Lane*, 489 U.S. 288, 309-13 (1989), the Supreme Court uses the terms, "new constitutional rules of criminal procedure" and "new substantive rules." To the extent that they have addressed the significance of these distinctions, courts have concluded that they should be interpreted as having the same functional meaning. *See Headbird v. United States*, No. 15-1468, 2016 WL 682984 (8th Cir. Feb. 19, 2016) (directly discussing the difference in language and collecting cases in support of equating the "newly recognized right" inquiry with the "new rule" inquiry of *Teague*); *see also United States v. Swinton*, 333 F.3d 481, 485 (3d Cir. 2003) (recognizing that "the language is somewhat different" between subsections (h)(2) and (f)(3) of § 2255 but applying its own precedent regarding a "new rule" in the (h)(2) context as controlling on the "new right" question in the (f)(3) context); *see also United States v. Cuong Gia Le*, 206 F. Supp. 3d 1134, 1143-44 (E.D. Va. 2016). Other courts which have not explicitly noted the difference have simply used the terms interchangeably in their analyses. *See Butterworth v. United States*, 775 F.3d 459, 464–65 (1st Cir. 2015), cert. denied, 135 S. Ct. 1517 (2015); *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207–08 (11th Cir. 2012); *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012); *Peterson v. Cain*, 302 F.3d 508, 510–11 (5th Cir. 2002) (discussing the statutory limitation period of 28 U.S.C. § 2244(d)(1)(C) requiring a "constitutional right . . . newly recognized by the Supreme Court"—also enacted as part of AEDPA—by reference to the pre-existing "new rule" Teague jurisprudence). Therefore, notwithstanding the slight differences between these terms, the undersigned concludes that the Teague "new rule" jurisprudence informs the question of what constitutes a newly recognized right under 28 U.S.C. § 2255(f)(3).

> [W]hen all we do is apply a general standard to the kind of factual circumstances it was meant to address, we will rarely state a new rule . . . .

*Chaidez*, 568 U.S. at 1107 (quotations omitted) (emphasis in original). The Supreme Court accordingly held that "garden-variety applications of [a] test . . . do not produce new rules." *Id*. Again, I cannot conclude that, should the Supreme Court decide that the pre-*Booker* residual clause of U.S.S.G. § 4B1.2 is constitutionally void for vagueness, such a result would be a garden-variety application of *Johnson*. Instead, it would be finally addressing the question left open in *Beckles*. *See, e.g.*, *United States v. Johnson*, 457 U.S. 537, 551 (1982) (explaining that a prior precedent of *Payton v. New York*, 445 U.S. 573 (1980) "did not simply apply settled precedent to a new set of facts" because the *Payton* Court "acknowledged that the 'important constitutional question presented' there had been 'expressly left open in a number of [their] prior opinions.'"). In short, the hypothetical future case would itself be recognizing a new right. Given that conclusion, it cannot be said that *Johnson* has already recognized the right.[12]

## III. CONCLUSION

For Petitioner's motion to be timely such that this Court has jurisdiction to grant it, he must establish that *Johnson* recognized the right he asserts and that such right was made retroactive. 28 U.S.C. § 2255(f)(3). The right asserted by Petitioner is that

---

[12] A contrary conclusion could dictate an unfair result in other future petitions. If *Johnson* recognized the right asserted by Petitioner, prisoners sentenced under a vague pre-*Booker* sentencing guideline may be foreclosed from relief pursuant to § 2255(f)(3) unless they had filed a petition within a year of *Johnson* (*i.e.*, no later than June 26, 2016), notwithstanding a new Supreme Court opinion expressly applying the void-for-vagueness doctrine to pre-*Booker* sentences.

14

procedural due process prohibits enhancing his sentencing guideline range pursuant to the residual clause of the "crime of violence" definition in § 4B1.2(a)(2) of the guidelines because that clause is void for vagueness.  However, an essential component of such a right is that sentencing guidelines are subject to a void-for-vagueness challenge generally.  *Johnson* simply does not recognize that premise.  As such, it cannot recognize the right asserted.  As the Eleventh Circuit reasoned, "*Johnson* says and decided nothing about career-offender enhancements under the Sentencing Guidelines . . . ."  *Beckles*, 616 F. App'x at 416.

Because the right asserted by Petitioner has not been recognized in *Johnson* or otherwise, and because it does not qualify as timely under any other subsection of § 2255(f), I recommend that the Court DENY Petitioner's § 2255 Motion as untimely and DISMISS for lack of jurisdiction.[13]

GREGORY B. WORMUTH
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

[13] In his Third Supplemental Brief, Petitioner states the following: "In the event that the Court concludes that Mr. Zamora's motion is time-barred for the reasons argued by the government, Mr. Zamora asks the Court to hold his motion in abeyance pending the Supreme Court's inevitable decision resolving the applicability of *Johnson* in mandatory guidelines cases. This will avoid Mr. Zamora being later unfairly precluded from filing what would then be a 'second or subsequent' petition simply because he abided by the timeline dictated by the issuance of the *Johnson* decision." Doc. 13 at 3 n.2. However, the Tenth Circuit "has held generally that any habeas petition that does not result in an adjudication of the merits of the habeas claims, whether that adjudication be on procedural or substantive grounds, will not count as a first habeas petition for purposes of determining whether later habeas petitions are second or successive." *Douglas v. Workman*, 560 F.3d 1156, 1188 n.18 (10th Cir. 2009) (citing *Haro-Arteaga v. United States*, 199 F.3d 1195, 1196 (10th Cir. 1999) (per curiam)). The undersigned concludes that the proposed dismissal for lack of jurisdiction due to untimeliness would not invoke the 28 U.S.C. § 2244(b)(2) gatekeeping requirements should Petitioner file a future motion after a Supreme Court decision recognizing the right he asserts. Should the Court wish to memorialize this understanding, the final order could explicitly state that the dismissal was without prejudice to refiling should the Supreme Court rule that the pre-*Booker* sentencing guidelines are subject to void-for-vagueness challenges. *See, e.g.*, *United States v. Juarez-Sanchez*, 223 F. App'x 348, 349-50 (5th Cir. 2007) (unpublished).